UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

YAPHET K. JAMAL,
        Plaintiff,

vs.                                                          09-1421

TERI GARRETT, et al.
        Defendants.

SUMMARY JUDGEMENT ORDER

        This cause is before the court for consideration of the Defendants' motion for summary judgement. [d/e 20]

I. BACKGROUND

        The Plaintiff, a federal prisoner, filed this lawsuit pursuant to *Bivens v.Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) claiming that his constitutional rights were violated at the Federal Correctional Institution in Pekin, Illinois. On January 22, 2010, the court conducted a merit review of the Plaintiff's complaint and found that he had stated the following claim: Warden D. Smith, Lieutenant Floyd and Religious Services Coordinator Teri Garrett violated the Plaintiff's First Amendment right to freely exercise his religion.

        The Plaintiff alleged that on June 2, 2009, he was leaving the dining room after the noon meal when Defendant Garrett called the Plaintiff over for "a pat down search of plaintiff's person for the purpose of detecting contraband." (Comp, p. 6)   The Plaintiff says he told Garrett that he is an orthodox Muslim, and therefore was not to have physical contact with a member of the opposite sex.   The Plaintiff asked for a male staff member to conduct the search, and noted that there were other male officers in the area.  Defendant Garrett denied the plaintiff's request and threatened to take disciplinary action if he did not comply with the search.  Lieutenant Floyd also ordered the Plaintiff to comply with the search and the Warden took no action afer he was notified of the problem.

        The Defendants have filed a motion for summary judgement claiming that the Plaintiff has not exhausted his administrative remedies as required. [d/e 20]

II.  FACTS

        The Bureau of Prisons (herein BOP) has created an Administrative Remedy Program, which is the "process through which inmates may seek formal review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10.  An inmate must first attempt informal resolution of his complaint by presenting the issue informally to staff. 28 C.F.R. § 542.13(a). If

1

the complaint cannot be resolved informally, the inmate may then submit a formal written Administrative Remedy Request to the Warden, on a designated form, within twenty days of the event that triggered the inmate's complaint. 28 C.F.R. § 542.14(a). The inmate may next appeal from a denial to the appropriate Regional Director. 28 C.F.R. § 542.15(a). Within 30 days of a negative decision, the inmate may then finally appeal to the General Counsel's office in the Central Office. *Id*. Final exhaustion occurs only when the issue is considered by the Central Office. 28 C.F.R. §§ 542.14-.15.

Heather MacConnell is the Legal Secretary for the United States Department of Justice and says her job duties include working with the BOP record keeping system for inmate grievances. (Def. Memo, Mac. Aff, p. 1) MacConnell has reviewed these records for any administrative remedies filed by the Plaintiff concerning the June 2, 2009 pat down search and says she found one relevant request.

On June 15, 2009, the Plaintiff filed a request for an administrative remedy with the Warden stating that his religion prohibited him from a pat down search by female officers. (Def. Memo, Mac. Aff, p. 2; Plaintiff's req, App. 11). The Plaintiff complained of the specific incident on June 2, 2009. The request was denied on June 19, 2009. (Def. Memo, App. 12).

The Plaintiff appealed this decision to the North Central Regional Office on July 2, 2009, but it was again denied on July 21, 2009. (Def. Memo, App. 13-15). The Plaintiff sent his final appeal to the Central Office on August 19, 2009. (Def. Memo, Mac. Aff, p. 2) However, the appeal was rejected because the Plaintiff had not provided the required copy of his institution administrative remedy. The Plaintiff was given 15 days to resubmit the proper form. (Def. Memo, Mac. Aff, p. 2).

The Plaintiff sent a second appeal to the Central Office on November 2, 2009, but it was rejected as untimely. The Plaintiff was instructed " to provide staff verification that his untimely filing was not his fault." (Def. Memo, Mac. Aff, p. 2). Nonetheless, MacConnell says the BOP records show no further activity regarding this grievance. (Def. Memo, Mac. Aff, p. 2). The Plaintiff filed this lawsuit on December 29, 2009.

III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

IV. ANALYSIS

The Defendants argue that the Plaintiff cannot demonstrate that he exhausted his administrative remedies as required. The Prison Litigation Reform Act (herein PLRA) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The Seventh Circuit has taken a strict compliance approach to exhaustion requiring a prisoner to pursue all available administrative remedies and comply with the prison's procedural rules and deadlines. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)

If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

The Plaintiff agrees that his first appeal to the Central Office on August 19, 2009, was rejected because he did not submit the proper paperwork. (d/e 27, Plain. Resp.,p. 2). The Plaintiff says he received the notice on September 28, 2009 and was given 15 days to resubmit his grievance. (d/e 26, Plain Resp., Ex. 4). The Plaintiff says within this time period, on October 7, 2009, he asked for an extension of 30 days to file his appeal. While the Plaintiff does not provide a copy of his request for additional time, he has provided a copy of an envelope

addressed to the Central Office that is stamped as received at the correctional facility on October 8, 2009. (d/e 26, Plain Resp., Ex. 14).   The Plaintiff says he received no response for the Central Office.

The Plaintiff then sent his second appeal to the Central Office along with the necessary paperwork.  (d/e 26, Plain Resp., Ex. 5).  The Plaintiff says his appeal included a letter dated October 23, 2009 which states that the documents are a "follow up to a request for an extension of time with this office dated October 7, 2009." *Id.*   Although the Plaintiff never directly mentions why he needed additional time to file this appeal, it appears from his letter that he just received copies of the necessary paperwork on October 23, 2009. *Id*

The Plaintiff says although his second appeal was found to be untimely, he has met the requirements of the PLRA because he exhausted all "available" administrative remedies. 42 U.S.C. §1997e(a).  The PLRA  does not define availability for purposes of the exhaustion requirement.   Nonetheless, it is clear that a plaintiff's claims cannot be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809-10 (7th Cir.2006).

The Defendants argue that there is no evidence the Central Office ever received the Plaintiff's request for additional time.   The Plaintiff says he never received a response or even an acknowledgment that the office had received his request for additional time and only realized there was a problem when his appeal was ultimately denied as untimely.   However, the Defendants point to the fact that the second denial of the Plaintiff's appeal stated that he could "provide staff verification on letterhead that the untimely filing was not your fault." (d/e 26, Plain Resp., Ex. 6).  The Plaintiff does not dispute that he received this information. *Id.* Nonetheless, the Plaintiff took no further action.  He did not indicate that he had asked for additional time, nor did he state that there was a delay in receiving his paperwork.

The Defendants say the Plaintiff simply did not follow the correct procedures.  The Administrative Remedy Program specifically speaks to this situation:

> Where the inmate demonstrates a valid reason for delay, an extension in
> filing time may be allowed. In general, valid reason for delay means a
> situation which prevented the inmate from submitting the request within
> the established time frame. Valid reasons for delay include the following:
> an extended period in-transit during which the inmate was separated from documents
> needed to prepare the Request or Appeal; an extended period
> of time during which the inmate was physically incapable of preparing a
> Request or Appeal; an unusually long period taken for informal resolution attempts;
> indication by an inmate, verified by staff, that a response to the
> inmate's request for copies of dispositions requested under § 542.19 of
> this part was delayed.28 C.F.R. § 542.14(b)

The Plaintiff admits he never asked for such an extension after receiving the denial of his second appeal. The Plaintiff explains that he could not have obtained staff verification that the delay was not his fault because it "would have been a fraud." (d/e 26, Plain Resp., p. 3). The Plaintiff says it was not his fault, but the fault of the Central Office for failing to respond to his request for additional time.

The Plaintiff's claim is not sufficient. There is no evidence the Plaintiff's first request for an extension of time was ever received by the Central Office. Even if it was received, the Plaintiff would need to provide some evidence that the delay was caused by the failure of prison officials to provide him timely copies. The Plaintiff does not claim he sent this verification with his first request for an extension of time.

When the Plaintiff's appeal was ultimately denied as untimely, he still had the opportunity again to explain that the delay was caused by his inability to obtain copies. However, the Plaintiff chose not to respond and did not mention his previous request for an extension of time to the Central Office. The Plaintiff is now trying to bypass the Administrative Remedy Program and instead take his arguments directly to the court. The court cannot find that the Plaintiff "followed the prescribed steps and could do nothing more" prior to filing this lawsuit. *Robertson*, 2009 WL 2382527 at 3. The motion for summary judgement is granted.

**IT IS THEREFORE ORDERED that:**

**1) The Defendants' motion for summary judgment is granted pursuant to Federal Rule of Civil Procedure 56 for failure to exhaust administrative remedies as required. [d/e 20]. The Clerk of the court is directed to enter judgment in favor of the Defendants and against the Plaintiff pursuant to Fed. R. Civ. P. 56. The case is terminated. The parties are to bear their own costs.**

2) **If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the Plaintiff may also accumulate another strike under 28 U.S.C. 1915(g)**

**3) The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the Plaintiff's prison trust fund account if such funds are available. If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The Plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed. Release from incarceration does not relieve the Plaintiff of his obligation to pay the filing fee in full. The Plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**

**5) The clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office.**

Entered this 15th day of November, 2010.


**s/ Joe Billy McDade**
_____
JOE BILLY MCDADE
UNITED STATES DISTRICT JUDGE